# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Kic v. Bianucci*, 2011 IL App (1st) 100622

---

| | |
|---|---|
| Appellate Court Caption | TERESA KIC, Plaintiff-Appellant, v. WILLIAM BIANUCCI, Defendant-Appellee. |
| District & No. | First District, Second Division<br>Docket No. 1-10-0622 |
| Filed | December 13, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The denial of plaintiff's motion to reconsider the judgment dissolving her marriage to defendant was upheld over her contentions that the trial court; *inter alia*, improperly denied her motion for substitution of judge, erred in reopening discovery after the trial began, erred in allowing defendant to amend his pleadings, improperly allowed him additional time to respond to a request to admit, and improperly intervened and advised defendant to testify. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 06-D6-30547; the Hon. Edward A. Arce, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Barrett & Sramek, of Palos Heights (Bernadette Garrison Barrett, of counsel), for appellant. |
| | |
| | Panos & Associates, LLC, of Palos Heights (Diane M. Panos, Nancy M. Donlon and Jeffrey L. Paustian, of counsel), for appellee. |
| | |
| Panel | JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion. |
| | Presiding Justice Quinn and Justice Harris concurred in the judgment and opinion. |

## OPINION

¶ 1    This appeal arises from a February 9, 2010 order entered by the circuit court of Cook County, which denied plaintiff-appellant Teresa Kic's (Teresa) motion to reconsider the judgment for dissolution of marriage. On appeal, Teresa argues that: (1) the trial court erred in denying her motion for substitution of judge; (2) the trial court erred in reopening discovery after trial began and allowing the defendant-appellee, William Bianucci (William), to amend his pleadings; (3) the trial court improperly allowed William additional time to respond to a request to admit facts; (4) the trial court erred by failing to name a residential parent and failed to enter an order of child support, education expenses and extracurricular activities for the minor child; (5) the trial court improperly intervened and advised William, who was acting *pro se*, to testify; (6) the trial court's ruling allowing William a year to refinance the marital residence was inequitable and improper; (7) the trial court improperly penalized Teresa for the same financial matter more than once; (8) the trial court erred in failing to incorporate a list of marital property subject to distribution in its order; and (9) the trial court erred in failing to find a specific date regarding the breakdown of the marriage and its finding of dissipation of marital assets by Teresa was against the manifest weight of the evidence. In response, William argues that: (1) Teresa has forfeited four of the issues she raises on appeal for failing to include them in her motion to reconsider; (2) Teresa has forfeited eight of the issues she raises on appeal due to their deficiency under Illinois Supreme Court Rule 341(h)(7) (eff. July 1, 2008); and (3) the trial court properly denied Teresa's motion for substitution of judge. For the following reasons, we affirm the judgment of the circuit court of Cook County.

¶ 2                          BACKGROUND

¶ 3    Teresa and William were married on August 29, 1987, and the marriage was registered in Cook County, Illinois. In 1998, the parties acquired the marital residence located at 11740 Shaker Ct., Orland Park, IL (Shaker Ct. home), through tenancy by the entirety. The parties

obtained a mortgage at the time the residence was purchased, and after it was refinanced the home was encumbered by a mortgage of approximately $500,000. The home was further encumbered by a home equity line of credit with a balance of approximately $99,632. Between 1998 and 1999, the parties acquired a commercial building located at 525 Burnham St., Calumet City, IL (State Farm office), through joint tenancy. The State Farm office contains five total rental units, one of which is used for Teresa's sole proprietorship as an insurance agent for State Farm Insurance Company. Teresa rents the other four units in the building, generating income from the property which amounted to $16,104 in 2007. The State Farm office was encumbered by a mortgage of $53,187.67 as of October 2008.

¶ 4     On May 13, 2003, Teresa and William's only child, Robert Bianucci (Robert) was born. In December 2003, William was convicted 1 count of bank fraud and 12 counts of false statements to a bank. William was sentenced to 46 months' imprisonment and 60 months' supervised release and ordered to pay restitution in the sum of $3,418,854. The restitution lien against William also attached to both the Shaker Ct. home and the State Farm office. On June 29, 2004, William executed a durable power of attorney to Teresa which gave her the authority to control all his finances. William was incarcerated on June 30, 2004, and released on March 5, 2007. On July 12, 2005, Teresa formed a limited liability company called Bigsy Properties L.L.C. (Bigsy Properties). In July 2005, Bigsy Properties borrowed $400,000 from Teresa's mother, Jane Kic (Jane). These funds were used to purchase vacant lots pursuant to a business agreement between Bigsy Properties and R&D Development. On January 31, 2006, William revoked his power of attorney.

¶ 5     On May 18, 2006, Teresa filed a petition for dissolution of marriage. William, while he was still incarcerated, filed an answer to the petition for dissolution of marriage on June 26, 2006, acting *pro se*. William also filed a motion for a temporary stay of all proceedings until he was no longer incarcerated and able to return to Chicago. On the same day, Teresa filed a motion for a default prove-up. On September 13, 2006, William was granted leave to file an appearance.

¶ 6     On December 12, 2006, Teresa was awarded temporary sole custody of Robert. William was awarded visitation and ordered to pay child support in the amount of $70 per week. Teresa was allowed possession of the Shaker Ct. home from Sunday through Thursday night. William was allowed possession of the residence from Thursday night through Sunday. Teresa was also ordered to pay all utilities of the home and monthly installments of the home equity line of credit. William was ordered to pay the monthly mortgage payments and real estate taxes. On March 5, 2007, William was released from prison.

¶ 7     On August 7, 2007, counsel for Teresa filed a motion for leave to withdraw as attorney of record. The motion was granted on August 16, 2007. On May 9, 2008, Teresa, appearing *pro se*, filed a petition for legal separation. On January 10, 2008, the parties entered into a mediation agreement that established a joint custody agreement by which they each agreed to share residential responsibilities in caring for Robert. On May 1, 2008, Judge Naomi Schuster (Judge Schuster) set the matter for pretrial on June 18, 2008. Later that week, Judge Schuster was reassigned to a different court and Judge Edward Arce (Judge Arce) was assigned to handle the matter. On June 18, 2008, both parties appeared *pro se* and presented motions before Judge Arce. The matter was then set for trial. The trial date was continued

and at a status hearing Teresa presented a motion for substitution of judge. On July 30, 2008, William presented an emergency motion that sought payment by Teresa for the real estate taxes; contribution to the monthly expenses of the marital residence; and to assert a claim dissipation of marital assets by Teresa.[1] On August 14, 2008, the court granted Teresa's emergency motion for leave to file an additional appearance by counsel. On September 30, 2008, Teresa's motion for substitution of judge was denied.

¶ 8    The trial commenced on November 18, 2008 in the circuit court of Cook County. Teresa appeared with counsel. William appeared *pro se* during the entirety of the trial. On January 26, 2009, William presented (but did not file) a motion claiming marital economic misconduct including but not limited to the dissipation of marital assets by Teresa. Teresa filed a motion to strike these additional allegations but the trial court allowed discovery on these issues.[2] After the parties exchanged discovery, William was allowed an extension beyond 28 days to respond to Teresa's request to admit facts. During trial on June 25, 2009, as William was preparing to rest his case in chief, the trial court asked him whether he planned to testify. The trial court then told William that without testimony from him there was nothing to consider with respect to William's case. William then gave his testimony in narrative form.

¶ 9    On September 8, 2009, the trial court entered the judgment for dissolution of marriage. The extensive order ruled on all of the contested issues including custody, maintenance, distribution of real property, distribution of retirement accounts, dissipation, and division of martial property. Most notably, the trial court reserved the issue of child support, granted William sole possession of the Shaker Ct. home with a year to refinance and remove Teresa's name from any attached obligations, and found that Teresa had dissipated the marital estate in the sum of $310,964.03.[3] On October 7, 2009, Teresa filed a motion to reconsider the court's ruling of September 8, 2009. Her motion alleged: (1) that the reopening of discovery and allowing William to assert a claim of economic misconduct in January 2009 after trial began was a manifest error of law; (2) that it was a manifest error of law to grant William an extension of time to answer Teresa's request to admit facts; (3) that allowing William a year to refinance the Shaker Ct. home is a manifest error of law; (4) that the trial court failed to specify the date of irretrievable breakdown of the marriage for the dissipation claim; and (5) that the finding of dissipation of marital assets by Teresa is against the manifest weight of the evidence. Teresa also sought modification of the judgment for dissolution in the amount that William was awarded regarding her State Farm mutual fund retirement account. On

---

[1]This motion is not in the record because it was never actually filed in court. The trial court ruled that the motion was not an emergency and it was never filed.

[2]The trial court did not actually grant or deny William's motion in a written order but instead ordered the parties to exchange discovery on the issues presented in William's motion.

[3]This sum was based on individual findings of dissipation in the amounts of $147,000, $86,458.16, $55,000, and $22,505.87. The actual balance due to William was $124,719.52 due to the court's finding of William's dissipation of $61,525.

October 29, 2009, William filed a response to Teresa's motion to reconsider and for modification of the judgment for dissolution.

¶ 10    On February 9, 2010, the trial court ruled that Teresa's motion to reconsider was granted regarding William's award from the State Farm mutual fund, but that the remaining issues were denied. William's motion for modification was also denied. On February 25, 2010, Teresa filed a notice of appeal.

¶ 11                                          ANALYSIS

¶ 12    As a preliminary matter before we consider Teresa's arguments, we must determine if this court has jurisdiction. William argues that Teresa forfeited four of the issues[4] raised in her brief because she failed to include them in her motion to reconsider in the trial court. William presents a compelling argument that Teresa may not raise issues for the first time on appeal. William points out that Teresa raised the issues in a legal memorandum instead of in a motion. He argues that no exception to the forfeiture rule should apply to Teresa. In general, William's argument is correct as applied to jury cases. Specifically, a party may not argue on appeal any point that was not specified in the party's posttrial motion before the trial court. Ill. S. Ct. R. 366(b)(2)(iii) (eff. Feb. 1, 1994). However, in civil bench trials, "[n]either the filing of nor the failure to file a post-judgment motion limits the scope of review." Ill. S. Ct. R. 366(b)(3)(ii) (eff. Feb. 1, 1994). Furthermore, it has been repeatedly held that failure to raise an issue in a posttrial motion does not preclude a party from raising that issue on appeal in nonjury civil cases. *Shumak v. Shumak*, 30 Ill. App. 3d 188, 332 N.E.2d 177 (1975); *City of Chicago v. Mid-City Laundry Co.*, 8 Ill. App. 3d 88, 289 N.E.2d 233 (1972). Therefore, Teresa's failure to include arguments (1), (4), (5), and (8) in her motion to reconsider is not fatal to her arguments on appeal.

¶ 13    We first consider Teresa's argument that the trial court erred in denying her motion for substitution of judge. A motion for substitution of judge as of right shall be granted if it is presented before trial and before the judge has made a ruling on any substantial issue. 735 ILCS 5/2-1001(a)(2)(ii) (West 2008). The trial court "has no discretion to deny a proper motion for substitution of judge." *Rodisch v. Commacho-Esparza*, 309 Ill. App. 3d 346, 350, 722 N.E.2d 326, 330 (1999). In addition to the substantial issue rule, there is an exception that allows the denial of a motion for substitution of judge. When the happenings at a pretrial conference allow a party to "test the waters" and get an idea of the judge's opinion on some of the issues of the case, a motion for substitution of judge can be properly denied. *In re Estate of Gay*, 353 Ill. App. 3d 341, 343, 818 N.E.2d 860, 863 (2004). The purpose of this exception is to keep parties from "judge shopping" when they are able to tell which way a judge is leaning on a case before substantial issues have been decided. *Id*. In *Gay*, the trial judge hosted pretrial conferences that were not memorialized. *Id*. The appellate court held that when the trial judge's recollections do not contradict or impeach the record, the judge can rely on those recollections in determining the substance of the pretrial conference. *Id*. at 344, 818 N.E.2d at 863. The denial of a motion for substitution of judge is reviewed *de novo*.

---

[4]Specifically, issues (1), (4), (5), and (8).

*Id*. at 343, 818 N.E.2d at 863.

¶ 14 In this case, the parties are in dispute as to whether a pretrial conference was held and whether Teresa was able to test the waters before presenting her motion for substitution of judge. The question of whether the trial judge ruled on a substantive matter is not at issue here and has no bearing on our analysis. On May 1, 2008, Judge Schuster set the matter for pretrial on June 18, 2008. During the first week of May 2008, Judge Schuster was reassigned to another court and Judge Arce was assigned to handle the matter. On June 18, 2008, the parties appeared *pro se* and presented motions before Judge Arce. Teresa presented a motion for legal separation and William presented a motion for property settlement. Judge Arce set the matter for trial status on August 11, 2008, and for trial on August 18, 2008. The trial date was continued and Judge Arce continued to hear various motions from both parties during the period before trial. At a trial status hearing on September 22, 2008, Teresa presented a motion for substitution of judge, and Judge Arce set the motion for hearing on September 30, 2008. On September 30, 2008, Judge Arce denied Teresa's motion for substitution of judge on the basis that he had conducted a pretrial conference before the motion was presented.

¶ 15 At the time of the June 18, 2008 pretrial, both parties appeared *pro se*. The proceedings went unmemorialized and Teresa offers no bystander's report or affidavit describing the substance of the proceedings. Therefore, we are only able to rely upon Judge Arce's own recollections. In dealing with two *pro se* parties presenting motions at a pretrial conference, it is reasonable to assume that Judge Arce discussed matters of substance regarding the case. The record suggests that from his recollections of the pretrial conference, Judge Arce determined that Teresa's motion for substitution of judge was inappropriate at this point in the proceedings. There is no evidence in the record that contradicted Judge Arce's recollections. Absent any such evidence by Teresa, we hold that Judge Arce's denial of Teresa's motion for substitution of judge was proper.

¶ 16 We next examine whether the trial court committed reversible error when the trial court allowed William to reopen discovery and amend his pleadings after the trial began. As a rule, the trial court is able to supervise "all or any part of any discovery procedure." Ill. S. Ct. R. 201(c)(2) (eff. July 1, 2002). It is well established in Illinois that the trial court is afforded broad discretion in ruling on discovery matters. *BlueStar Energy Services, Inc. v. Illinois Commerce Comm'n*, 374 Ill. App. 3d 990, 996, 871 N.E.2d 880, 887 (2007). The exercise of the trial court's discretion will not be overturned on appeal unless there was clearly an abuse of discretion. *Id*. "An abuse of discretion occurs where the trial court acts arbitrarily and fails to employ conscientious judgment and ignores recognized principles of law." *Castro v. Brown's Chicken & Pasta, Inc.*, 314 Ill. App. 3d 542, 554, 732 N.E.2d 37, 47 (2000) (citing *Avery v. Sabbia*, 301 Ill. App. 3d 839, 844, 704 N.E.2d 750, 755 (1998)).

¶ 17 Teresa argues that the trial court erred by allowing William to present (but not file) an emergency motion on July 30, 2008. The motion sought contribution to real estate taxes and monthly expenses of the marital estate by Teresa, and also asserted a claim of dissipation of marital assets by Teresa. The trial court ruled that William's motion was not an emergency and continued the motion until the time of trial on the issues of contribution to real estate taxes and monthly expenses of the marital estate. The trial court did not rule on the issue of dissipation of marital assets. The record shows no evidence that the trial court abused its

discretion in allowing William's motion to be presented. There are no facts to suggest that the trial court acted arbitrarily, failed to employ conscientious judgment, or ignored recognized principles of law. Because the trial court is afforded broad discretion in overseeing discovery matters, absent a showing of an abuse of discretion, this court will not overturn the trial court's ruling. Teresa highlights the fact that, although continued, William's July 30, 2008 motion was never filed with the clerk of the court and never ruled on by the trial court. However, this fact proves to be detrimental to Teresa's argument. In the absence of an adverse ruling against Teresa, she cannot claim wrongdoing or prejudice by the court. The trial court did not rule on William's July 30, 2008 motion as a separate act but rather seems to have considered the issues raised in the motion in the context of resolving the whole case. Based on this analysis, the actions of the trial court cannot be said to be detrimental to Teresa. Accordingly, Teresa's argument on this issue fails.

¶ 18      Teresa argues that the trial court erred when it allowed William to present a motion on January 26, 2009 claiming marital economic misconduct, including the dissipation of marital assets by Teresa. Teresa filed a motion to strike William's motion, but the trial court denied her motion to strike and reopened discovery. Teresa claims that William's supplemental and amended pleadings were in the improper form. Further, Teresa argues that the rules require that a party claiming dissipation must put the opposing party on notice of the claim if it is not pled. She also argues that William's January 26, 2009 motion contradicted his answer to the petition for dissolution of marriage and his emergency motion of July 30, 2008 regarding the date of the irretrievable breakdown of the marriage.

¶ 19      The trial court has broad discretion in whether or not to reopen discovery, and that decision will not be disturbed absent an abuse of discretion. *Ruane v. Amore*, 287 Ill. App. 3d 465, 471, 677 N.E.2d 1369, 1374 (1997). The record does not reveal any evidence that the trial court abused its discretion. Furthermore, Teresa does not provide citations to case law or cases whose facts are analogous to this case. Accordingly, we find no error by the trial court. Simply put, Teresa's arguments are unsupported by the record or case law and are unpersuasive.

¶ 20      Teresa makes additional arguments attacking William's pleadings and motions as a whole based on deficiency in form. However, Teresa's arguments are unsupported by the record or case law. Section 2-616 of the Illinois Code of Civil Procedure states in relevant part:

"At any time before final judgment amendments may be allowed on just and reasonable terms, introducing any party who ought to have been joined as plaintiff or defendant, dismissing any party, *changing the cause of action or defense or adding new causes of action or defenses, and in any matter, either of form or substance, in any process, pleading, bill of particulars or proceedings, which may enable the plaintiff to sustain the claim for which it was intended to be brought or the defendant to make a defense or assert a cross claim*." (Emphasis added.) 735 ILCS 5/2-616(a) (West 2010).

Thus, the trial court, in its discretion, could properly allow William to amend his complaint. Furthermore, dissipation may be considered by the trial court *sua sponte* regardless of the pleadings of either party. *In re Marriage of Sanfratello*, 393 Ill. App. 3d 641, 653, 913

N.E.2d 1077, 1089 (2009); 750 ILCS 5/503(d)(2) (West 2010). Teresa further argues that William's dissipation claim from the July 30, 2008 motion and the January 26, 2009 motion should not be considered. However, the trial court has the discretion to consider dissipation by either party regardless of the allegations in the pleadings. In this case, the court did not rule on the issue of dissipation until it entered the dissolution order. Therefore, Teresa was not prejudiced by any ruling on the issue.

¶ 21    Similarly, Teresa argues that the trial court committed reversible error when it allowed William more than 28 days to respond to a request to admit facts. On March 13, 2009, Teresa's request for admission of facts was mailed to William. After receiving no response, Teresa filed motions to strike William's amended complaint and to deem the request to admit facts as true and correct. In response, William stated: (1) that he did not receive any requests prior to April 28, 2009; (2) that if the requests were sent on March 13, 2009, he would have received them on March 17, 2009; (3) that there was a vacation hold placed on his mail from March 16, 2009 to March 19, 2009; and (4) that he believes Teresa intercepted and picked up his mail from the post office on March 18, 2009.

¶ 22    The decision whether to allow an extension for a discovery matter is discretionary. Teresa is unable to show that the trial court abused its discretion in allowing William an extension. The Illinois Supreme Court Rules allow the trial court to extend the time to file any pleading either before or after the expiration of the deadline when good cause is shown. Ill. S. Ct. R. 183 (eff. Feb. 16, 2011). What constitutes "good cause" is a fact-dependent issue and falls withing the discretion of the court. *Vision Point of Sale, Inc. v. Haas*, 226 Ill. 2d 334, 353, 875 N.E.2d 1065, 1079 (2007). Supreme Court Rule 183 applies to responses to requests to admit facts. *Id.* at 343, 875 N.E.2d at 1072. In this case, the trial court considered William's explanations for his untimely response and granted an extension. There is no evidence of abuse of discretion by the trial court.

¶ 23    Teresa next presents a number of arguments that are not framed in the context of a proper legal theory or supported by any legal authority whatsoever. William argues that this unorthodox presentation should bar Teresa's claims from being considered. The Illinois Supreme Court Rules provide that the appellant's brief must contain contentions along with citations to the authorities and pages in the record relied upon. Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008). A failure to cite relevant authority violates Rule 341 and can cause a party to forfeit consideration of the issue. *Fortech, L.L.C. v. R.W. Dunteman Co.*, 366 Ill. App. 3d 804, 818, 852 N.E.2d 451, 463 (2006). Arguments that violate Rule 341 do not merit consideration and can be rejected solely for that reason. *Maun v. Department of Professional Regulation*, 299 Ill. App. 3d 388, 399, 701 N.E.2d 791, 799 (1998). "The appellate court is not a depository in which the appellant may dump the burden of argument and research." *Thrall Car Manufacturing Co. v. Lindquist*, 145 Ill. App. 3d 712, 719, 495 N.E.2d 1132, 1137 (1986). However, a court may consider improperly raised issues in the interest of finding a just result because Rule 341 is not a limitation on the court's jurisdiction, but an admonishment to the parties. *Brown v. Brown*, 62 Ill. App. 3d 328, 332-33, 379 N.E.2d 634, 637 (1978). Five of Teresa's nine arguments are presented with absolutely no citations to legal authority. The arguments contain record citations that are intermittent and often inaccurate. We note that these issues could be forfeited on the basis of noncompliance with

Rule 341. However, notwithstanding the deficiencies, Teresa's arguments warrant discussion and resolution.

¶ 24    The first of these unsupported contentions is that the trial court committed reversible error when it failed to name a residential parent and failed to enter an order on child support, educational expenses and extracurricular activities for the minor child. The Illinois Marriage and Dissolution of Marriage Act (the Act) states that the court has jurisdiction to enter a judgment for dissolution of marriage even if it has reserved the issues of child custody, support, maintenance or distribution of property. 750 ILCS 5/401(b) (West 2010). This can be accomplished through either the agreement of the parties or motion by either party and a finding of "appropriate circumstances" by the court. *Id*. While we recognize that the statute generally discourages judgments that are bifurcated, it does provide that when appropriate circumstances are present the court has discretion to reserve the issues of child custody, support, maintenance or distribution of property to be determined subsequent to the judgment of dissolution. See *In re Marriage of Cohn*, 93 Ill. 2d 190, 443 N.E.2d 541 (1982). It has been held that appropriate circumstances include circumstances "where the court does not have *in personam* jurisdiction over the respondent, where a party is unable to pay child support or maintenance if so ordered, where the court has set aside an adequate fund for child support pursuant to section 503(d) of the Act [citation], or where the children do not reside with either parent." *In re Marriage of Cohn*, 93 Ill. 2d 190, 195, 443 N.E.2d 541, 543 (1982). This rule has been interpreted not just to allow the reservation of ancillary issues in the enumerated circumstances listed above, but also to include circumstances that are of the same caliber. *In re Marriage of Wade*, 408 Ill. App. 3d 775, 778, 946 N.E.2d 485, 488 (2011). The trial court's decision to enter a bifurcated judgment for dissolution is reviewed using an abuse of discretion standard. *Id*. at 778, 946 N.E.2d at 488. As the finder of fact, this allows the court broad discretion in deciding whether to grant bifurcation. *Id*. at 780, 946 N.E.2d at 490.

¶ 25    Teresa argues that the trial court committed reversible error when it reserved the issue of child support. In this case, the only issue that was reserved was child support and there is considerable evidence in the record and in trial court's order that supports the ruling by the trial court. In determining whether to reserve the issue of child support, the court considered a number of statutory factors, including the financial resources of the child, the split custody system that was established by the mediation agreement, and the fact that both parents earned considerable income that could provide for Robert. The court felt that in light of these facts, the application of a child support order against either party was not warranted. Although the facts and circumstances in this case are not among the enumerated circumstances listed in *Cohn* and *Wade*, they are of the same caliber. Teresa makes no showing that the trial court acted arbitrarily or ignored established principles of law in reserving the issue of child support. Therefore, we hold that the trial court did not abuse its discretion.

¶ 26    Teresa also claims that the trial court erred by entering an order that was silent on the issues of designating a residential parent and contributions to educational expenses and extracurricular activities for Robert. A close examination of the trial court's order does not support Teresa's contentions. On the issue of designating a residential parent, the trial court recognized that the parties had agreed to and implemented a stable system where Robert lives

in the Shaker Ct. home full time (the home in which he has lived since birth). William lives in the Shaker Ct. home with Robert from Thursday night through Sunday of each week, and Teresa lives with Robert in the same home from Sunday through Thursday afternoon of each week. The system was established by a mediation agreement between the parties dated January 10, 2008. In its ruling, the court considered many factors including the statutory guidelines that permit joint custody of a child (750 ILCS 5/501 (West 2010)), and the guidelines that determine the best interests of the child (750 ILCS 5/602(a) (West 2010)). Without restating significant portions of the trial court's order, we note that the court gave a lengthy, in-depth analysis of relevant factors before ultimately deciding not to disrupt the already agreed-upon system that had been established by the parties. The trial court declared that each parent would share the residential responsibilities in caring for Robert. Most notably, the trial court reasoned that both the parties had adjusted their lifestyles and work schedules and had successfully set their personal differences aside for the best interests of their child. Clearly, the court weighed appropriate factors in making its determination. Accordingly, there was no abuse of discretion and the trial court's ruling will not be disturbed.

¶ 27   In regard to the claims concerning educational, medical, and extracurricular activity expenses, the trial court's order in fact addressed each one of these issues. In its final judgment, the trial court's order states that each party will pay equally all medical and dental expenses for Robert which are not covered by insurance; that Teresa will provide Robert with medical insurance coverage and that William is to reimburse Teresa for half of the cost of coverage; and the parties are to consult each other concerning all of Robert's extracurricular activities. Therefore, Teresa's arguments that the trial court failed to rule on these issues are without merit.

¶ 28   Teresa also argues that the trial court committed reversible error when it failed to incorporate, in paragraph T of the judgment for dissolution, a list of marital property that was subject to distribution. No reasoning is presented nor citations to legal authority. An examination of paragraph T along with paragraphs L and M shows that while the trial court did not specifically itemize all the property that was to be distributed, it did award each party his or her own personal clothing, jewelry, bank accounts, automobiles, items of apparel and other personal property. The order also provided a method for the parties to fairly distribute the remaining property in the marital residence. The deficiency of this argument is such that there is no basis for disturbing the trial court's ruling on these issues.

¶ 29   Next, we consider Teresa's argument that the trial court committed reversible error when the trial court advised William that he should testify. Generally, the court has wide latitude when conducting a trial. *Crump v. Universal Safety Equipment Co.*, 79 Ill. App. 3d 202, 210, 398 N.E.2d 188, 194 (1979). Moreover, in a nonjury trial, the comments of a trial judge are allowed greater latitude than in jury trials. *City of Chicago v. Westphalen*, 93 Ill. App. 3d 1110, 1121, 418 N.E.2d 63, 72 (1981). "[N]ot every comment or unguarded expression by a trial judge will support a claim of prejudice. A showing of prejudicial effect is required." *Id*.

¶ 30   In *Westphalen*, the trial judge advised the defendant in open court to retain another lawyer. See *Westphalen*, 93 Ill. App. 3d 1110, 418 N.E.2d 63. This court found that the

comments made were not prejudicial. See *id*. The comments made by the trial court in this case are even less prejudicial than in *Westphalen*. At trial, as William was about to rest his case in chief, the following exchange occurred:

"THE COURT: No other witnesses?

MR. BIANUCCI [William]: No

THE COURT: You're not going to testify on your own case?

MR. BIANUCCI [William]: Can I just make statements?

THE COURT: You're going to have to. You're representing yourself.

MR. BIANUCCI [William]: Okay.

THE COURT: But if you don't present a case as part of your case, then–I mean I still haven't heard from you what you are saying your date of separation was, other than as part of your questioning, but that's certainly not evidence.

MR. BIANUCCI [William]: Okay. I do apologize.

THE COURT: And I apologize for overstepping my bounds a little bit, but if I don't do this then ***."

These are the statements that Teresa is challenging. We do not find that this comment by the court suggests that it was acting as an advocate for William. On the contrary, the trial court was within its discretion in clarifying the procedural process during trial. There is nothing to suggest that the trial court's statements prejudiced Teresa. We note that this was a bench trial.

¶ 31    Teresa also argues that the trial court committed reversible error when it allowed William a year to refinance the Shaker Ct. home and to remove Teresa's name from any mortgage obligation. Teresa claims this ruling limited her options. In support of this assertion, Teresa cites section 503 of the Act (750 ILCS 5/503 (West 2010)), which sets forth the factors to be considered in equitable distribution.

¶ 32    "In cases involving the distribution of martial property, the appellate court will reverse only upon a finding that the lower court abused its discretion." *In re Marriage of McHenry*, 292 Ill. App. 3d 634, 639, 686 N.E.2d 670, 674 (1997). Equitable distribution does not have to be equal, and when the court rules that one spouse receives income-producing assets, "the court may achieve an equitable distribution by awarding offsetting payments to the other spouse or by awarding a greater share of the total marital assets to the spouse who does not receive the income-producing assets." *Id*. at 643, 686 N.E.2d at 677.

¶ 33    In this case, the trial court recognized that the parties owned the Shaker Ct. home, encumbered by a mortgage of $500,000, and a home equity loan of $99,632. They also owned the State Farm office, encumbered by a mortgage of $53,187.67, in joint tenancy. Both qualify as marital property and are also encumbered by a federal lien of $3,418,854 due to William's criminal conviction. The trial court considered the relative value and primary purposes of both properties. The court reasoned that the Shaker Ct. property does not have any substantial equity. On the other hand, the court found that the State Farm office generated $16,104 in rental income in 2007 and was estimated at the time to be worth between $140,000 and $150,000. The court reasoned that the only way to effectuate an

-11-

equitable division of marital property would be to sell the properties; however, both parties requested that the court not exercise that option. The parties agreed that William should be allowed to retain the Shaker Ct. home as long as he is able to refinance the existing mortgages and remove Teresa's name. The court awarded William the Shaker Ct. home while awarding Teresa the income-producing State Farm office. At the time of the ruling, Teresa's income was more than twice the amount of William's income. The mere fact that William was given a year to refinance the Shaker Ct. home does not support an abuse of discretion allegation in the distribution of marital property. Absent an abuse of discretion, we cannot hold that the distribution of marital property was inequitable.

¶ 34　　Teresa further argues that the trial court committed reversible error by penalizing her twice for the same matter when it found that she dissipated funds by withdrawing money in the amount of $86,458.16 from the State Farm mutual fund account on November 19, 2007. However, she makes no cogent argument in support of this contention. Because this argument is clearly deficient pursuant to Illinois Supreme Court Rule 341, we will not consider this issue on appeal and it is therefore forfeited.

¶ 35　　Teresa's final argument is that the trial court committed reversible error when it found that she dissipated martial assets and failed to identify the date of the irretrievable breakdown of the marriage. Again, she fails to make a cogent argument and provides no legal support for her theory. "A decision is against the manifest weight of the evidence when the opposite conclusion is clearly evident or where it is unreasonable, arbitrary, and not based on the evidence." *In re Marriage of Berger*, 357 Ill. App. 3d 651, 660, 829 N.E.2d 879, 887 (2005). We must review the evidence in the light most favorable to the appellee, and where there is a possibility for multiple inferences, we must accept those inferences that support the court's order. *In re Marriage of Divelbiss*, 308 Ill. App. 3d 198, 206-07, 719 N.E.2d 375, 381 (1999). Teresa's theory that the trial court's finding of dissipation was against the manifest weight of the evidence is wholly unsupported by the record or established legal principles. Therefore, we cannot say that the trial court's finding is against the manifest weight of the evidence.

¶ 36　　For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 37　　Affirmed.